SYLVIA FLEISCHER, Appellant, *v.* JULIUS FLEISCHER, Respondent.

First Department, May 25, 1928.

*I. Maurice Wormser* of counsel [*William Macy*, attorney], for the appellant.

*Frederick Zorn* of counsel [*Kahn & Zorn*, attorneys], for the respondent.

MARTIN, J. This action was brought by the plaintiff to obtain a separation from her husband. The case was sent to a referee apparently without any reason and testimony was taken over a long period with the result that the printed record consists of over 1,350 pages.

There was judgment dismissing the complaint and granting judgment of separation to the defendant on the ground of abandonment, he having interposed a counterclaim.

Beginning with March, 1923, a series of incidents occurred upon which plaintiff bases her cause of action for separation for cruel and inhuman treatment.

During that month the defendant became ill with influenza. His doctor instructed plaintiff to admit no one to his room. The defendant's sisters complained that plaintiff refused to permit members of his family to enter his room. Thereafter, when any one visited him he requested his wife to leave. Subsequent to this illness plaintiff and defendant went to Europe where they remained from June 23 to August 15, 1923.

Upon their return the defendant's attitude wholly changed and apparently without cause. He repeatedly called the plaintiff vile names, spat in her face, abused her, ordered her out of the house, struck and beat her, had the telephone disconnected, published a notice in the newspapers that he would not be responsible for her debts, left her bills unpaid, refused to give her sufficient money to pay the ordinary and necessary household expenses, hired a detective to watch her, and refused to eat at the table with her and many times to speak to or carry on any conversation with her, leaving her allowance each day under the base of the telephone.

It appears that the defendant has been in bad health and irritable almost from the time of the marriage. Their differences seem to

have commenced before the marriage and to have become more acute after a few months of married life. The defendant finally admitted that plaintiff threatened to leave him at least twelve times during the three years prior to the time she actually did leave, and that they were continually quarreling. He appears to have been constantly nagging the plaintiff. He attributes his ill-temper and irritability to illness.

The referee says that constant disputes before the parties were married should have put the plaintiff on notice as to defendant's temperamental defects. He says: " I mention the matter of the pre-nuptial discussions and quarrels to show that plaintiff knew or should have known of the temperamental defects that then existed and undoubtedly continued after the marriage."

The plaintiff should not be compelled to submit to indignities because of defendant's bad temper or so-called temperamental defects. Many acts of inhuman treatment were shown; some of which defendant admitted, others that were proved by documentary evidence and many proved by witnesses who corroborated the plaintiff.

The defendant paid a detective to watch his wife. He says this was merely to watch the house so that she would not take any of his furniture or goods away. He told numerous people that she was a thief; that she padded bills and was not to be trusted. He frequently ordered her out of the house and in fact locked her out on at least one occasion. He directed the superintendent of the building and the elevator boys not to accept any packages from anybody for her, not to allow any to be taken up or down in the elevator or out of the apartment.

She testified to having been beaten by him, and the doctor who treated her after she had been assaulted by the defendant corroborated her with reference to the injuries.

According to the referee: " A perusal of the record will convince the impartial reader that the difficulties between the parties herein are, at most, trivial." With that conclusion we are unable to agree. Moreover, the incidents recited above do not include all of the complaints against the defendant. The record shows a course of continual abuse, resulting in the plaintiff being compelled to leave the defendant.

The referee asserts that under the authorities cited such a course of conduct is not sufficient to warrant a wife leaving her husband. We do not so understand the law. It is remarkable that this plaintiff was able to tolerate the conditions referred to for so long a period and to submit to defendant's harsh, cruel and inhuman treatment.

Whenever his examination turned to matters which would throw light upon defendant's financial condition, he would answer that he did not remember. This was also true in part as to the main issue. For example, though he said a friend had recommended the private detective, he was unable to tell the name of the friend or give any information as to the employment of the detective to watch his wife, the amount he paid or other circumstances relating to the incident.

The evidence submitted in this record is insufficient as a basis for the fixing of alimony. It will be necessary, therefore, to send this case to an official referee for that purpose.

The judgment should be reversed, with costs, and defendant's counterclaim dismissed, and judgment granted in favor of plaintiff for a separation from bed and board of defendant, with costs. In relation to alimony the case will be referred to an official referee.

DOWLING, P. J., and MERRELL, J., concur.

FINCH, J. (dissenting). A clear-cut issue of fact is herein involved and, in our opinion, has been correctly disposed of. There is no question that if what the plaintiff claims is true she should succeed, but upon this record the referee has found that her claims are not true and his finding is not against the weight of the evidence. Each of these two adults wants a legal separation from the other. The not unfamiliar picture is presented of both seeking to create and magnify incidents in the marriage life to serve their present purpose. Which one is to blame is the question of fact presented. Fortunately there are no children of the marriage. The main issues were testified to by the plaintiff and the defendant. The latter vehemently denied all assertions of plaintiff as to any and all charges of misconduct. The plaintiff was padding her bills in collusion with storekeepers, and the defendant was practically forced to suspend her credit so as to prevent himself from being robbed. The plaintiff also deliberately abandoned the home after sending a moving van to sack the same. While the plaintiff was treated by a doctor, who was her relative, for bruises, there was no testimony corroborating the plaintiff as to how the bruises occurred. The defendant denied he had caused them. Moreover, in two specific instances the plaintiff showed herself guilty of false testimony. The issue thus turns upon where the credibility lies, and the opportunity to hear and observe as the testimony falls from the lips of the witnesses counts for much.

In view of the foregoing and the sharp conflict in the evidence, the referee was justified in giving credence to the testimony on behalf of the defendant, as opposed to that on behalf of the plaintiff.

The judgment appealed from should be modified in one particular, namely, by striking out the item of costs against the plaintiff, and as so modified affirmed.

O'MALLEY, J., concurs.

Judgment reversed, with costs, and defendant's counterclaim dismissed, and judgment granted in favor of plaintiff for a separation, with costs. In relation to alimony the case will be referred to an official referee. Settle order on notice.